IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-00981-MJW

JENNIFER PARADY,

Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

Defendant.

## OPINION AND ORDER

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

The government determined that Jennifer Parady is not disabled for purposes of Social Security Disability Insurance. Parady has asked this Court to review that decision. The Court has jurisdiction under 42 U.S.C. § 405(g), and both parties have agreed to have this case decided by a U.S. Magistrate Judge under 28 U.S.C. § 636(c). The Court AFFIRMS the government's determination.

## Discussion

The Court reviews the ALJ's decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied. *See Pisciotta v. Astrue,* 500 F.3d 1074, 1075 (10th Cir. 2007). "Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *Raymond v. Astrue*, 621 F.3d 1269, 1271–72 (10th Cir. 2009) (internal quotation marks omitted). The Court "should, indeed must, exercise common sense" and "cannot insist on

2

technical perfection." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The Court cannot reweigh the evidence or its credibility. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

**I.      "Step Two" Errors**

Several of Parady's arguments assert that the ALJ made an error during the "step two" analysis. The Social Security Administration applies a five-step process for determining disability. The first three steps attempt to rule the claimant disabled or not disabled through comparatively unambiguous tests. If those steps fail to resolve the question, the government makes an assessment of the functional limitations imposed by the claimant's impairments—coming to a conclusion as to the claimant's residual functional capacity ("RFC"). Once that RFC assessment is made, the government proceeds to the fourth and fifth steps of analysis: whether, with that RFC, the claimant can perform his or her past jobs; and if not, whether the claimant can perform other jobs that are available. *See* 20 C.F.R. § 416.920(a)(4). The RFC assessment is "a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." Security Ruling 96–8p, 61 Fed. Reg. 34,474, 34,476 (July 2, 1996).

The Tenth Circuit has described the second-step analysis this way:

> . . . At step two, it is the claimant's burden to demonstrate an impairment, or a combination of impairments, that significantly limit her ability to do basic work activities.
>
> The Supreme Court has adopted what is referred to as a "de minimus" standard with regard to the step two severity standard: only those claimants with slight abnormalities that do not significantly limit any basic work activity can be denied benefits without undertaking the

>subsequent steps of the sequential evaluation process. Basic work activities are abilities and aptitudes necessary to do most jobs, including walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgement, responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting.
>
>The step-two severity determination is based on medical factors alone, and does not include consideration of such vocational factors as age, education, and work experience.

*Langley v. Barnhart*, 373 F.3d 1116, 1118, 1123 (10th Cir. 2004) (internal citations, quotation marks, and alterations omitted). If a claimant fails to meet this slight burden, the claimant is ruled non-disabled and the ALJ's inquiry is over; if this slight burden is met, the ALJ proceeds on to the more rigorous analysis that follows.

Importantly, the remaining analysis after step two is effectively *de novo*: all impairments must be considered whether they were "severe" or not at step two; the functional limitations imposed by the impairments are a separate inquiry which the ALJ must perform anew, rather than relying on the earlier analysis; and the findings at step two do not bind or limit the ALJ's later analysis. *See, e.g.*, *Wells v. Colvin*, 727 F.3d 1061, 1065–66 (10th Cir. 2013). For that reason, *how* the claimant passes step two is more or less irrelevant. As long as the government didn't resolve the claim against the claimant at step two, any error is necessarily harmless error. *See Carpenter v. Astrue*, 537 F.3d 1264, 1265–66 (10th Cir. 2008). Here, the ALJ found that Parady satisfied the step-two standard, and the ALJ proceeded to perform the more detailed analysis required in step three and in the RFC analysis. For example: Parady challenges the ALJ's failure to determine that her depression and anxiety constituted a severe

limitation. But even if that was error, Parady's case proceeded to the next steps, and the ALJ weighed the evidence of Parady's mental health in detail in the RFC analysis (and Parady does not challenge the ALJ's discussion of the evidence at that point). As a result, even assuming *arguendo* that the ALJ made errors in the step-two analysis, those errors are harmless.

## III. RFC Errors

Parady's remaining arguments relate to the RFC assessment: whether the ALJ performed a proper "chronic pain" analysis; whether the ALJ properly accounted for evidence of Parady's fibromyalgia; and whether the ALJ properly accounted for evidence of other injuries to Parady's wrist, shoulders, and cervical spine.

***Chronic pain***. Under Tenth Circuit case law, an ALJ must follow a three-step process when assessing subjective complaints of pain:

> A disability claimant's complaints of disabling pain are evaluated using the three-step analysis set out in *Luna v. Bowen,* 834 F.2d 161 (10th Cir. 1987). Under *Luna* an ALJ faced with a claim of disabling pain is required to consider and determine (1) whether the claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether the impairment is reasonably expected to produce some pain of the sort alleged (what we term a "loose nexus"); and (3) if so, whether, considering all the evidence, both objective and subjective, the claimant's pain was in fact disabling.

*Keyes-Zachary v. Astrue,* 695 F.3d 1156, 1166–67 (10th Cir. 2012). Here, the ALJ discussed Parady's testimony of chronic pain at length (AR 27), found her credibility lacking (*id.*), but nonetheless determined that her medically determinable impairments could reasonably be expected to produce her alleged symptoms (AR 28). This satisfies the first two steps of the *Luna* analysis. The ALJ then went on to determine in light of all

5

the evidence that her allegations were overstated. (AR 28–30.) This satisfies the third step of *Luna*. And in all three steps, the ALJ set forth specific and legitimate evidence from the record supporting the analysis.

>    ***Fibromyalgia***. As explained by the Tenth Circuit:
>
>    "Because proving the disease is difficult, fibromyalgia presents a conundrum for insurers and courts evaluating disability claims." *Welch v. UNUM Life Ins. Co. of Am.*, 382 F.3d 1078, 1087 (10th Cir. 2004) (ellipsis and internal quotation marks omitted) (collecting cases); *see also Wilson* [*v. Astrue*], 602 F.3d [1136,] 1143 [(10th Cir. 2010)] (recognizing that "complaints of severe pain that do not readily lend themselves to analysis by objective medical tests are notoriously difficult to diagnose and treat" (collecting cases, including cases addressing fibromyalgia)). "Since fibromyalgia only manifests itself through clinical symptoms, there are no laboratory tests that can confirm the diagnosis." *Gilbertson v. Allied Signal, Inc.*, 328 F.3d 625, 627 n. 1 (10th Cir. 2003). Thus, to the extent that the ALJ discounted [a claimant's] fibromyalgia because of benign medical test results, she appears to have erred.

*Romero v. Colvin*, 563 F. App'x 618, 621 (10th Cir. 2014). However, where the ALJ's opinion turns not on the absence of clinical results but on other evidence to discount a claimant's fibromyalgia-based allegations—for example, evidence that treatment successfully alleviates the claimant's symptoms—such analysis is proper. *Id.* Here, the ALJ did not discount Parady's testimony as to her symptoms based on the absence of clinical proof. He discounted it based on a consultative examiner's assessment of her functional limitations (AR 29); evidence from a claims investigator (who had surveilled her) that she was actually able to go about her day-to-day life free of any apparent limitations (AR 30); and evidence that epidural injections and other treatment tended to alleviate her symptoms, by her own admission (AR 30). These are proper factors for

purposes of a fibromyalgia analysis, and they are well supported by substantial evidence.

***Wrist, shoulder, and cervical spine injuries***. Parady argues that the ALJ failed to address limitations imposed by other injuries. An ALJ is not allowed to ignore limitations suggested by the record. See *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007); *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). But the ALJ did not do so here. The ALJ specifically addressed the injuries Parady refers to, in detail (AR 28, 30), even assigning a functional limitation based on those injuries in the RFC analysis (AR 27 ("the claimant is unable to perform overhead reaching")). The ALJ's discussion of these medical records, and ultimate RFC conclusion, is supported by substantial evidence.

## Conclusion

For the reasons set forth above, the Commissioner's decision is AFFIRMED.

Dated this 18th day of May, 2015.

BY THE COURT:

*/s/ Michael J. Watanabe*
MICHAEL J. WATANABE
United States Magistrate Judge